UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 12-30068-RGS

ROBERT ADAMSON,
Plaintiff
v.
WALGREENS CO.,
Defendant

MEMORANDUM AND ORDER ON WALGREEN CO.'S
MOTION FOR SUMMARY JUDGEMENT

April 10, 2013

STEARNS, D.J.

Plaintiff Robert Adamson alleges that his former employer, defendant Walgreens Co. (Walgreens), violated the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 621, *et seq.* (ADEA), and its Massachusetts state law analog, Mass. Gen. Laws ch. 151B (Chapter 151B), by terminating his employment because of his age.  Walgreens now moves for summary judgment on both the federal and state age discrimination claims.  A hearing on the motion was held on April 2, 2013.

BACKGROUND

The following background facts and the underlying sequence of events provide context for this dispute.  The court will subsequently address in more detail the facts necessary for disposition of Walgreens' motion.  Because the dispute is before the

court on a motion for summary judgment, the facts are viewed in the light most favorable to Adamson as the non-moving party.

Adamson began working for Walgreens in September of 2007. He was then aged fifty-five (55). He was hired as an Assistant Manager and kept this position until his discharge in 2011, when he was fifty-eight (58) years old. The duties of an Assistant Manager include protecting store assets, contributing to the selection, training, and development of personnel, and providing proper service to customers. Ogden Dec. – Ex. A. Adamson was trained by Walgreens on the importance of customer service. In his own words, Adamson understood that the fundamentals of Walgreens' customer service policy are "to always greet the customer, to assist the customer, don't let the customer stay alone in the store, walk them into the aisles, provide a good customer experience. Adamson Dep. 29:20-30:3.

Walgreens terminated Adamson on February 10, 2011, citing two incidents of unsatisfactory customer service. In the first of these incidents, which occurred on October 21, 2010, a customer visited the Ware, Massachusetts store where Adamson was then working,[1] and attempted to make a return. A cashier paged Adamson over

---

[1] Adamson was originally hired to work at a Walgreens store in Florida, where he was then residing. In or around November of 2008, he requested and received a transfer to a store location in Massachusetts. He worked at stores located in Chicopee and Worcester before beginning work at the store in Ware in October of 2010.

the store's intercom seeking managerial assistance with the return, but Adamson, who was overseeing a warehouse delivery at the time, did not respond to the call. When the cashier went to retrieve Adamson from the stock room, Adamson told him to ask the customer to come back later. The customer complained to the cashier about the inconvenience. The cashier, in turn, reported the complaint to Stephen Benoit (age 50), the Store Manager.

Benoit then contacted Peter Serafin (age 53), the Loss Prevention Supervisor, for advice on the appropriate level of discipline. By virtue of his position, Serafin was knowledgeable about disciplinary issues involving employees at other stores in the district. Ultimately, the decision was made to issue Adamson a "Final Written Warning," which Benoit did on October 26, 2010. The Final Written Warning listed the reason for discipline as "Poor Customer Service/Refused Customer Return." Adamson Dep. – Ex. 1. On the Optional Employee Response to Discipline that accompanied the Final Written Warning, Adamson acknowledged that he "made a judgement [sic] call during a truck delivery not to attend the customer at that moment and I expected to do so happily afterwards. This was wrong. I will continue to maintain my high standards of customer service throughout while exercising better judgement [sic] as well." Adamson Dep. – Ex. 1.

The second incident occurred less than four months later, on February 5, 2011.

3

When a service clerk was late for his 8:00 a.m. shift, Adamson left the front of the store unattended while he went to look for the clerk's telephone number in the back office.  When he was unable to find the store roster, Adamson called Julie Martineau, another Assistant Store Manager, and Ashleigh Sykes, the Store Team Leader, in an attempt to track down the clerk's number.  He made these calls from the back office rather than from the phone located at the front of the store.

While the front of the store was unattended, a customer attempted to make a purchase, but could not find a salesperson to ring her up.  After leaving the store, the customer called the Walgreens' customer hotline and complained.  She reported that she was "at the register for 15 minutes and there was no one," that she was "calling for an employee and no one came so she just left," and that she "could of [sic] just walked out with the items."  Adamson Dep. – Ex. 3.

Benoit attempted to contact the customer to discuss her complaint.  The Walgreens "Issue Communication Form" documenting the complaint indicates that Benoit telephoned the customer several times, but was unable to reach her within the two days that the Walgreens customer complaint policy requires.  Benoit testified in his deposition that he was later able to speak to the customer.  According to Benoit, she was not seeking monetary compensation, but rather wanted simply to inform him of a problem at his store.

Benoit also reviewed the Ware store security footage from that morning.  The video confirmed that a customer came into the store, placed items at the register as if to purchase them, looked up and down the aisles, and then left without making a purchase.  She was in the store for just under two minutes and fifty seconds. According to Walgreens, the video shows that Adamson was outside the view of the camera for twelve minutes before and after the customer departed the store.  Adamson denies that he spent more than two to three minutes in the back office attempting to retrieve the clerk's telephone number, but admits to spending additional time "in the aft part of the store addressing aisles."  Adamson Dep. 64:8-11; 73:14-15.

Following this incident, Benoit consulted with Serafin and District Manager Paul Holstein (age 46) for "fairness and consistency" purposes.  The termination notice issued to Adamson referenced the prior incident and identified "Poor Customer Service" as the basis for the termination.  Adamson Dep. – Ex. 2.  The notice explained that Adamson "should have managed the store from the front entrance till support arrived" and that his failure to do so "left the front store opening it up to possible theft and poor customer service."  Adamson Dec. – Ex. 4.

At the time of Adamson's discharge, the Ware store employed approximately twenty-one people.  One third of the employees at that time were over the age of forty, and four (in addition to Adamson) were in their fifties.  During 2010 and 2011,

three employees under the age of forty were involuntarily discharged.  Adamson was the only employee at the store over age forty whose employment was terminated during the relevant time period.  He was also the only managerial employee about whom Benoit had received verbal or written complaints regarding customer service issues.

District-wide personnel records reveal that managerial-level employees who received first-offense Final Written Warnings during the relevant period included an Assistant Manager, aged twenty-seven (27), who left a store unattended for six minutes; an Assistant Manager, aged twenty-eight (28), who physically detained a shoplifter; and an Executive Assistant Manager, aged thirty (30), who gave store keys to a non-managerial employee.  Other managers and pharmacy managers were disciplined for, *inter alia*, engaging in or failing to report sexual comments or behavior in the workplace and for lying about sick time.  Other than Adamson, no managerial employees in the district were terminated for customer service issues from 2009 to the time of the incident.

After Adamson was discharged, his position was filled by Pauline Hackett, an existing Walgreens employee who transferred into the position.  Hackett was fifty-years-old (50) at the time.[2]

---

[2] Adamson claims that he "was temporarily replaced by someone nearly seven years younger than he is, and then replaced long term by someone more than twenty years

STANDARD OF REVIEW

Summary judgment is appropriate if the evidence, viewed in the light most favorable to the non-moving party, "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A 'genuine' issue is one that could be resolved in favor of either party, and a 'material fact' is one that has the potential of affecting the outcome of the case." *Calero-Cerezo v. U.S. Dep't of Justice*, 355 F.3d 6, 19 (1st Cir. 2004), citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-250 (1986). A party seeking summary judgment bears the initial burden of demonstrating that there is no genuine issue as to a material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). If this is accomplished, the burden "shifts to the nonmoving party to establish the existence of an issue of fact that could affect the outcome of the litigation." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir.1990).

To oppose the motion successfully, the nonmoving party "may not rest upon the mere allegations or denials of his pleading." *Anderson*, 477 U.S. at 256. Rather, the nonmovant must submit "'sufficient evidence supporting the claimed factual dispute' to require a choice between 'the parties' differing versions of the truth at

his junior." Pl.'s Opp. at 5. Walgreens states in its reply that Hackett was officially assigned to the position and only left it after she was injured on the job and placed on extended disability leave. Def.'s Reply at 9. Neither party provides evidentiary support for these claims.

trial.'" *LeBlanc v. Great Am. Ins. Co.*, 6 F.3d 836, 841 (1st Cir. 1993), quoting *Hahn v. Sargent*, 523 F.2d 461, 464 (1st Cir. 1975).  "Even in cases where elusive concepts such as motive or intent are at issue, summary judgment may be appropriate if the nonmoving party rests merely upon conclusory allegations, improbable inferences, and unsupported speculation."  *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990).

## DISCUSSION

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  The plaintiff in an ADEA discrimination suit bears the ultimate burden of proving that age was the determinative factor in his discharge.  *Bonefont-Igaravidez v. International Shipping Corp.*, 659 F.3d 120, 123 (1st Cir. 2011).  Where, as here, there is no direct evidence of age discrimination, ADEA claims are evaluated under the familiar burden-shifting framework laid out in *McDonnell-Douglas v. Green*, 411 U.S. 792, 802-805 (1973).  *See Velez v. Thermo King de Puerto Rico, Inc.*, 585 F.3d 441, 446-447 & n.2 (1st Cir. 2009).

Under the *McDonnell-Douglas* framework, a plaintiff must first establish a prima facie case of employment discrimination.  *Id.* at 447.  In the context of an

ADEA claim for discriminatory firing, this requires the plaintiff to show that: (1) he was at least 40 years old at the time of the termination; (2) he was qualified for the position that he had held; (3) he was fired; and (4) his employer subsequently filled the position, demonstrating a continuing need for his services. *Id.* Once a plaintiff establishes a prima facie case, a presumption of age-based discrimination arises and the burden shifts to the employer to articulate a legitimate, non-discriminatory reason for the termination. *Id.* The employer's burden is one of production, not persuasion. *Davila v. Corporacion de Puerto Rico Para La Difusion Publica*, 498 F.3d 9, 16 (1st Cir. 2007). Accordingly, "the employer need do no more than articulate a reason which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive." *Id.* If the employer does so, the presumption of discrimination disappears, and "the burden reverts to the employee to show, by a preponderance of the evidence, that the employer's proffered reason for the adverse employment action is pretextual and that the true reason for the adverse action is discriminatory." *Bonefont-Igaravidez*, 659 F.3d at 124 (internal quotation marks and citation omitted).

The first, third, and fourth elements of Adamson's prima facie case are not in dispute. Walgreens acknowledges that Adamson was within the protected age group on February 10, 2011; that it terminated his employment on that date; and that it hired

9

a replacement immediately on his departure. The parties dispute whether Adamson can satisfy the second element of his prima facie burden, but for present purposes the court will assume that he has made the requisite showing. *See, e.g., Gomez-Gonzalez v. Rural Opportunities, Inc.*, 626 F.3d 654, 662 (1st Cir. 2010), citing *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 535 (1st Cir. 1996) ("On summary judgment, the need to order the presentation of proof is largely obviated, and a court may often dispense with strict attention to the burden-shifting framework, focusing instead on whether the evidence as a whole is sufficient to make out a jury question as to pretext and discriminatory animus."). Walgreens has come forward with a legitimate, non-discriminatory reason for terminating Adamson: the two incidents in which he was disciplined for poor customer service. The determinative question, then, is whether Adamson has adduced sufficient evidence from which a reasonable factfinder could conclude that this explanation is simply a pretext for age discrimination. The court concludes that he has not.

"Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Gomez-Gonzalez*, 626 F.3d at 662-662, quoting *Morgan v. Hilti, Inc.*, 108

F.3d 1319, 1323 (10th Cir. 1997).  In arguing that Walgreens' stated reason for discharging him was pretextual, Adamson first highlights alleged inconsistencies in Benoit's recollection and reporting of the February 5, 2011 incident.  He notes that Benoit stated in the Issue Communication Form that he had been unable to speak with the customer, but then took no steps to amend the form after (as he admitted in his deposition testimony) he eventually reached her by telephone.  Adamson also notes that Benoit initially testified that his review of the video surveillance footage led him to conclude that the customer had waited in the store for fifteen minutes, but changed his estimate to five minutes when pressed on the point during his deposition.  Based on these supposed inconsistencies, Adamson's counsel claims that Benoit "lied in order to facilitate the firing of Mr. Adamson."  Pl.'s Opp. at 5.

Adamson's argument distorts the facts.  These show – and Adamson admits – that he left the store unattended for a long enough period of time for the customer to attempt to make a purchase, become frustrated, and leave when no employee came to the register.  Neither Benoit's failure to amend the original customer complaint form, nor his imprecise recollection of a video he had reviewed nearly two years before his deposition, impeaches Walgreens' contention that Adamson's discharge was motivated by the customer complaint and not his age.  As the Court of Appeals recently stated, "[t]o impugn the veracity of a tangential aspect of [the defendant's]

11

story is not enough.  Rather, [the plaintiff] must elucidate specific facts to support the proposition that [the defendant's] reason for termination is not only a sham, but a sham intended to cover up its real  motive of discrimination." *Bonefont-Igaravidez*, 659 F.3d at 124-125 (internal quotation marks, alterations, and citation omitted).  The alleged inconsistencies identified by Adamson raise no such inference.

Adamson's next argument has even less heft.  He contends that his termination violated a Walgreens' policy requiring that an employee facing discipline be given the opportunity to offer an explanation for his actions.  Relatedly, he complains that there was  "no policy or rule regarding how [he] should have reacted when he opened the store alone" and that the Final Written Warning "only establishe[d] that [he] had been instructed he would be subject to further discipline if he failed to take a return from a customer in a timely fashion." Pl.'s Opp. at 8.  Although Adamson maintains otherwise, these arguments are but a thinly veiled attack on the propriety of his discharge.  "In essence, he asks the court to excuse his performance by replacing [Walgreens'] business judgment for his own, an untenable position." *Velazquez-Fernandez v. NCE Foods, Inc.*, 476 F.3d 6, 12 (1st Cir. 2007).  It is not the province of the court to second-guess Walgreens' decision to fire Adamson for two instances of poor customer service, as opposed to three or four or any other number. *See, e.g.*, *Fennell v. First Step Designs, Ltd.*, 83 F.3d 526, 537 (1st Cir. 1996) ("'Courts may

not sit as super personnel departments, assessing the merits – or even the rationality – of employers' nondiscriminatory business decisions.'" (quoting *Mesnick v. Gen. Elec. Co.*, 950 F.2d 816, 825 (1st Cir. 1991))).  And while proof of pretext may give rise to an inference of discrimination, proof of mistaken judgment does not.  *Davila*, 498 F.3d at 17.

In addition to challenging Benoit's credibility and Walgreens' business judgment, Adamson labors to persuade that he was treated less favorably than younger employees.  He grounds this argument on two separate allegations: that Benoit treated Martineau, a younger Assistant Manager, as Adamson's superior, and that Adamson received more severe punishment than younger employees who committed similar offenses.[3]  Neither offering bears fruit.

While there seems no doubt that Benoit thought highly of Martineau, the record is devoid of any evidence of preferential treatment based on her age.  In November or December of 2010, Benoit began training Martineau to become an Executive Assistant Manager.  Adamson asserts that as a result, Martineau was given greater authority over the store and staff, including supervisory authority over him.

[3] Adamson additionally alleges that Benoit engaged in text messaging conversations of a personal nature with Martineau and Sykes (both of whom were under the age of forty) and permitted them more desirable work schedules.  These allegations are easily dispatched, as Adamson offers no evidentiary basis for the first and the record evidence does not support the second.

13

He states that she was given access to computer programs and tools that were not available to other assistant managers and was encouraged to attend trainings that would allow her to be promoted to manager.  Adamson complains that despite his comparable experience, he was denied similar training and promotional opportunities when he requested them.   Even assuming that Adamson's allegations find support in the record (the support is meager at best), he has failed to offer any evidence that calls into doubt Benoit's explanation for the disparity – namely, that he considered Martineau a more valuable employee because she knew the store and he trusted her. Preferential treatment of one employee who happens to fall outside the protected class, without more, is insufficient to establish pretext.

Adamson's unsubstantiated allegation that younger employees received more lenient discipline for similar offenses also comes up short.  When using comparative evidence to show pretext, "it is the plaintiff's burden to demonstrate that [he] is comparing apples to apples." *Rathbun v. Autozone, Inc.*, 361 F.3d 62, 76 (1st Cir. 2004).  With regard to his termination, Adamson has not carried that burden.  As Walgreens emphasizes, "[t]his case involves a managerial employee who engaged in two serious breaches of Walgreens' expectations regarding customer service within a four month period."  Def.'s Mem. at 16.  Adamson is unable to point to any evidence in the record demonstrating that younger employees who committed

repeated infractions within a short time frame were not terminated for their conduct.

The record is clear that managerial employees in Adamson's district who committed similar infractions during the relevant period were also issued Final Written Warnings on their first offense, regardless of their age. One managerial employee was issued a Final Written Warning for a customer service issue (leaving the store unattended), and two managerial employees received such warnings for loss prevention issues (physically detaining a shoplifter and giving store keys to a non-managerial employee). These three employees were outside the protected class, yet, like Adamson, they received Final Written Warnings.

Finally, Adamson alleges that Benoit once remarked "You're that old!" upon learning of Adamson's actual age. Pl.'s Resp. to Def.'s Interrogs., Ogden Dec. – Ex. D at No. 22. This isolated comment, seemingly intended as a compliment, but at most ambiguous, is insufficient, standing alone, to satisfy Adamson's burden of showing discrimination. *See Lehman v. Prudential Ins. Co. of Am.*, 74 F.3d 323, 329 (1st Cir. 1996) ("Isolated, ambiguous remarks are insufficient, by themselves, to prove discriminatory intent."); *Speen v. Crown Clothing Corp.*, 102 F.3d 625, 636 (1st Cir. 1996) (same). Adamson was hired by Walgreens when he was fifty-five (55) years old and assigned to the Ware store when he was fifty-eight (58), already well within the protected age class. The individuals involved in his firing and replacement were

also members of the protected class: Benoit was aged fifty (50) at the time he made the decision to terminate Adamson; Serafin and Holstein, whom Benoit consulted for fairness and consistency purposes in that decision, were aged fifty-three (53) and forty-six (46); and Hackett, who replaced Adamson, was aged fifty (50).  No rational jury on these facts could glean an inference of age discrimination on Walgreens' part.

Because Adamson has failed to adduce sufficient evidence from which a finder of fact could infer that Walgreens' stated reason for his discharge was pretextual, a trial on his ADEA claim is not warranted.  This conclusion fatally undermines his Chapter 151B claim as well.  *See Matthews v. Ocean Spray Cranberries, Inc.*, 426 Mass. 122, 128 (1997).

ORDER

For the foregoing reasons, Walgreens' motion for summary judgment is ALLOWED.  The Clerk will enter judgment for Walgreens and close the case.

SO ORDERED.

/s/ Richard G. Stearns
_____
UNITED STATES DISTRICT JUDGE

16